IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | NO.  07-00040-03 |
| | : | |
| DOROTHY PRAWDZIK | : | |

## M E M O R A N D U M

STENGEL, J.                                                   August 20, 2008

Dorothy Prawdzik is charged in a superceding indictment with fifteen counts of using minors to engage in sexually explicit conduct for the purpose of producing visual depictions of that conduct which were produced using materials that had been sent by mail and shipped and transported in interstate and foreign commerce in violation of 18 U.S.C. §§ 2251(a) and 2251(e).  Miss Prawdzik filed a motion to suppress her statements taken by law enforcement authorities.  The government responded.  For the following reasons, I will deny the motion in its entirety.

## I. BACKGROUND

Miss Prawdzik argues that on December 13, 2006, members of the FBI and the Delaware County Criminal Investigation Division detained her for questioning without advising her of her Fifth and Sixth Amendment rights under Miranda v. Arizona, 384 U.S. 436 (1966).  Miss Prawdzik insists that she did not feel free to leave at any point during the several hours when she was questioned intensively.  Further, she argues that because the law enforcement officials knew or should have known that they would elicit a damaging statement from Miss Prawdzik, they should have advised her of her Miranda

rights, but did not.

## II. LEGAL STANDARD

Law enforcement officers are only required to give <u>Miranda</u> warnings when the person being questioned is in custody.  <u>Miranda</u>, 384 U.S. at 468.  A person is in custody when she either is arrested formally or her freedom of movement is restricted to "the degree associated with a formal arrest."  <u>United States v. Willaman</u>, 437 F.3d 354, 360 (3d Cir. Pa. 2006) (citing <u>United States v. Leese</u>, 176 F.3d 740, 743 (3d Cir. 1999)).  For a person to be in custody when she has not been arrested, "something must be said or done by the authorities, either in their manner of approach or in the tone or extent of their questioning, which indicates that they would not have heeded a request to depart or to allow the suspect to do so."  <u>Willaman</u>, 437 F.3d at 360 (citing <u>Steigler v. Anderson</u>, 496 F.2d 793, 799 (3d Cir. 1974)).  Thus, "police officers are not required to administer <u>Miranda</u> warnings to everyone whom they question."  <u>Oregon v. Mathiason</u>, 429 U.S. 492, 495.  <u>Miranda</u>, of course, requires warnings only when the person the police are questioning is in custody.  <u>Miranda</u>, 384 U.S. at 468.  Courts consider a variety of factors when determining if a person was in custody, including: (1) whether the officers told the suspect she was under arrest or free to leave; (2) the location or physical surroundings of the interrogation; (3) the length of the interrogation; (4) whether the officers used coercive tactics such as hostile tones of voice, the display of weapons, or physical restraint of the suspect's movement; and (5) whether the suspect voluntarily submitted to

2

questioning.  <u>Willaman</u>, 437 F.3d at 360.

## III.  DISCUSSION

At a hearing on the motion, Detective Sergeant John E. Kelly of the Delaware County District Attorney's Child Abuse Unit credibly testified that he reached out to Miss Prawdzik on December 12, 2006 by telephone to set up a meeting to discuss evidence that had been seized during two searches.  <u>See</u> N.T. 4/21/08.  Miss Prawdzik agreed to meet the detective and Special Agent Jennifer Coughlin of the Federal Bureau of Investigation the following day at a parking lot near Miss Prawdzik's home on Marshall Road in Drexel Hill.  Miss Prawdzik arrived at the parking lot with her daughter, and sat in an unmarked Ford Crown Victoria with Detective Kelly and Agent Coughlin.  The agents asked Miss Prawdzik if she had a preference to be interviewed in the car or somewhere else.  Having no preference, Miss Prawdzik agreed to go with them to the FBI headquarters in Newtown Square for the interview.

Detective Kelly testified that they chose to conduct the interview in the conference room at headquarters rather than in the interview room because the interview room is more prison-like.  The conference room has windows and a large conference table, and its door does not lock automatically allowing easy egress.  Once situated, Detective Kelly thanked Miss Prawdzik for agreeing to speak with them.  He told her that the agents were after the truth, and that she was not under arrest or going to be placed under arrest.  Miss Prawdzik was not physically restrained in any way.  He explained to Miss Prawdzik what

the videos contained and that she appeared on the videos.  During the interview, Miss Prawdzik went outside of the headquarters twice to smoke a cigarette.  She stopped the interview once to speak with her daughter by telephone.  Miss Prawdzik never indicated that she wanted to stop the interview, that she wanted an attorney, or expressed an unwillingness to speak to the agents.  Upon cross-examination, Detective Kelly credibly testified that Miss Prawdzik showed no reluctance to participate in the interview.  She was never told that if she did not cooperate, she would be arrested.

Agent Coughlin credibly testified that she accompanied Miss Prawdzik to the bathroom twice during the interview, but only to allow Miss Prawdzik to gain access back into the FBI offices from the outside hallway.

Miss Prawdzik testified at the hearing that she was reluctant to speak with Detective Kelly because he was resistant to tell her the purpose of the interview.  She felt that she was not given a choice, and that she was not free to leave the interview at any time.  Miss Prawdzik conceded that the agents told her that she was not being arrested.  However, she testified that both of the agents told her that if she did not cooperate or that if she lied, she would be arrested.  Miss Prawdzik also conceded that she never indicated to the agents that she wanted to stop the interview.  The agents told her that if she wrote out a statement, they would take her home.  So, thinking that she had no choice, she wrote out the statement.  Upon cross-examination, Miss Prawdzik conceded that at the time of the interview she was aware that her daughters had been sexually abused by Worman.

She also conceded that during the interview, she was not restrained in any way, she was not in handcuffs, there was no cage in the police car which transported her to the FBI offices, there were no bars on the windows at the FBI offices, and that she never told the agents to stop the interview or that she wanted an attorney.  Nevertheless, Miss Prawdzik felt like she was being "followed like a puppy dog."

Miss Prawdzik's written statement contained appropriate responses and demonstrated an understanding of the questions being asked.  At the conclusion of the interview, Miss Prawdzik was given a subpoena for the Grand Jury and an Advice of Rights form.  She voiced an understanding of her rights, then asked if she could contact the agents if she remembered anything else.  Even though she had incriminated herself, she was not arrested at that time, but brought back to her home by Detective Kelly.  On the following day, Miss Prawdzik contacted Agent Coughlin by telephone requesting to cooperate in the investigation.  It was not until almost two months later that Miss Prawdzik was indicted and arrested.

There is nothing in this record to support the allegation that Miss Prawdzik was subjected to a custodial interrogation on December 13, 2006.  Detective Kelly and Special Agent Coughlin provided credible testimony that Miss Prawdzik was not "taken into custody or otherwise deprived of her freedom in any significant way."  Miranda, 384 U.S. at 444.  Miss Prawdzik does not allege and the record does not show that the agents used physical force or restraint or verbally intimidated Miss Prawdzik.  See Willaman, 437

F.3d at 360.  There is no allegation that the agents displayed weapons.  Id.  There is no evidence that Miss Prawdzik was not free to leave or to terminate the interrogation.  In fact, Miss Prawdzik conceded that the agents told her that she was not being arrested, that she never indicated to the agents that she wanted to stop the interview, or that she wanted the assistance of counsel.  She spoke with her daughter by telephone during the interview, and left the building at least twice to smoke.

I see no basis from the record to conclude that there were other circumstances indicating that Miss Prawdzik was the subject of a custodial interrogation.  Therefore, it would be unreasonable to conclude that Miss Prawdzik's incriminating statements to the agents were not freely and voluntarily made at a time when she was not in custody.  Of course, in these circumstances Miranda is not implicated.  Accordingly, Miss Prawdzik's statements were not obtained in violation of her Fourth or Fifth Amendment rights.

An appropriate Order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| | : | |
| **v.** | : | **NO.  07-00040-03** |
| | : | |
| **DOROTHY PRAWDZIK** | : | |

## O R D E R

**STENGEL, J.**

  **AND NOW,** this   20th   day of August, 2008, upon consideration of the

defendant's motion to suppress statements (Document #68), the government's response

thereto (Document #80), and after a hearing on the motion, it is hereby ORDERED that

the motion is DENIED in its entirety.

                    BY THE COURT:


                     /s/ Lawrence F. Stengel
_____LAWRENCE F. STENGEL, J.